# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ian H. Levin | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 6356 | **DATE** | 4/29/2003 |
| **CASE TITLE** | Michael F. Gehrls vs. Jo Anne B. Barnhart | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] **Enter memorandum opinion and order on plaintiff's motion for summary judgment. Plaintiff's motion for summary judgment is granted in so far as it requests a remand of the ALJ's decision. The cause is hereby remanded to the Commissioner of Social Security for further proceedings consistent with this opinion. Judgment is entered pursuant to Rule 58 F.R.C.P. Status hearing of 5/2/03 is vacated.**

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | 3 | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | APR 30 2003 | |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 4/29/2003 | |
| | | | date mailed notice | |
| SM | courtroom deputy's initials | | SM | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MICHAEL F. GEHRLS,

    Plaintiff,

v.

JO ANNE B. BARNHART,
Commissioner of the Social Security
Administration,

    Defendant.

Case No. 02 C 6356

Magistrate Judge Ian H. Levin

DOCKETED APR 3 0 2003

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff's Motion for Summary Judgment in the cause and Defendant's brief in opposition.

## PROCEDURAL HISTORY

Plaintiff Michael F. Gehrls (hereinafter "Plaintiff") was born on November 21, 1954 and was forty-four years on his date of onset, December 24, 1998. He filed an initial application for disability (i.e., disability insurance benefits and social security income) on February 25, 1999 (R. 91-93) alleging a broken neck arising out of an automobile accident which occurred on the onset date. (R. 105.) Plaintiff's application was initially denied on July 27, 1999 (R. 65-68) and, again, on reconsideration on February 29, 2000. (R. 71-73.) Plaintiff then filed a timely request for an administrative hearing. (R. 78.) The hearing was held before an Administrative Law Judge (hereinafter "ALJ") on August 4, 2000. (R. 25.) The ALJ issued an unfavorable decision on November 24, 2000 and pursuant to Plaintiff's request for review, the Appeals Council affirmed the ALJ's decision on July 10, 2002. (R. 6-8.) Accordingly, the ALJ's decision became the final

decision of the Commissioner.

## **BACKGROUND FACTS**

Plaintiff was injured in a automobile accident on December 24, 1998. (R. 146.) Two days later when Plaintiff experienced neck pain he went to the emergency room at Condell Medical Center. An X-ray evaluation was performed which confirmed a fracture of the cervical spine (R. 155) and extensive degenerative changes of the lumbosacral (i.e. lumbar) spine.[1] (R. 154.) An MRI of Plaintiff's cervical spine also showed a herniated disk as C5-C6 and facet disruption at C4-C5. (R. 160.) A CT scan of Plaintiff's cervical spine indicated bilateral laminar fractures at C4 with possible dislocation and Clay-Shoveler's fractures. (R. 156.)

On December 30, 1998, Plaintiff underwent a posterior cervical C4-C5 fusion (by Dr. Dennis Maiman - neurosurgeon) to address the fracture at that location. (R. 164-65.) Because Plaintiff was asymptomatic with respect to the herniated disk at C5-C6, he did not undergo surgery to remove the disk. (R. 160.) Plaintiff tolerated his surgical procedure well and had a benign postoperative course. (R. 160.) After his hospitalization, he was followed up at a trauma center and received an extensive course of physical therapy. (R. 17, 199.) He was discharged from the trauma center because he had almost complete healing of his neck problems. (R. 17, 199.) A follow-up X-ray evaluation of Plaintiff's cervical spine indicated a stable C4-C5 posterior fusion. (R. 215.)

After his surgery, Plaintiff reported that he developed severe headaches and was dependent on taking pain medications. (R. 199.) In addition, approximately five to six months after the

---

[1]The degenerative changes of the lumbar spine *inter alia* included: (1) degenerative changes with a mild scoliosis convex to the left; and (2) degenerative changes at the L5 transitional level with loss of disc space height with more extensive degenerative changes and sclerosis at the transitional S1 level which has a Grade I spondylolisthesis as well as spondylolysis. (R. 154.)

2

accident, Plaintiff reported that he developed pain in both shoulders and his lower back, which radiated to his left leg, and numbness and tingling in his shoulders/arms. (R. 199.) Plaintiff's cervical back pain was further exacerbated when lifting or using his arms. (R. 38, 105, 122, 130, 190, 199 and 263).

*Additional Medical Evidence*

In March of 1999, Plaintiff saw Dr. Maiman. (R. 34.) An X-ray evaluation of Plaintiff's cervical spine showed a stable C4-C5 posterior fusion. (R. 215.) Plaintiff testified that, at this appointment, Dr. Maiman told him to see another doctor for nerve damage. (R. 34.)

On June 11, 1999, Dr. Maiman prepared a fracture report indicating that Plaintiff had a reduced range of motion and arm pain. (R. 190.)

On July 15, 1999, Dr. Stanley Burris, M.D., a non-examining state agency physician reviewed Plaintiff's medical record/evidence and determined that he retained the residual functional capacity ("RFC") to perform medium work. (R. 191-98).

On September 13, 1999, Plaintiff's EMG and nerve conduction study produced an abnormal electrophysiological study due to the presence of: mild chronic neuropathic changes noted in the distribution of C5-C6 integrated muscles consistent with chronic cervical radiculopathy at this level. (R. 212.) There was no evidence of acute denervation found and mild right carpal tunnel syndrome was noted. (R. 212.)

In October of 1999, an X-ray evaluation of Plaintiff's cervical spine showed no significant change in the posterolateral bilateral cervical fusion at C4-C5. (R. 214.)

On January 27, 2000, Dr. Sunant Suvanich, a state agency physician, examined Plaintiff. (R. 199-204.) Upon examination, Plaintiff demonstrated limited range of motion in his shoulder joints

on flexion from 0 to 90 degrees on the right compared to the left with 0 to 180 degrees. (R. 201.) Plaintiff also had difficulty with abduction. (R. 201.) He was able to raise the right shoulder up to about 90 degrees compared to 180 degrees on his left. (R. 201.) Plaintiff's upper strength was fair at about 3 out of 5. (R. 201.) His straight leg raising test was positive on the left from 0 to 60 degrees. (R. 201.) Plaintiff was also limited, but to a lesser degree, in his range of motion with respect to his cervical and lumbar spines. (R. 204.)

Despite these stated range of motion limitations, the ALJ's opinion primarily indicates that most of Dr. Suvanich's medical findings indicate that Plaintiff has no limitations. (R. 19.) For example, the ALJ states that Dr. Suvanich found that Plaintiff has no definite muscle weaknesses of the lower extremities, minimal range of motion limitations, and no neurological impairments (e.g., there was no evidence of any peripheral neuropathy of the upper or lower extremities, all of the cranial nerves were intact, and there was no definite loss of sensation in the shoulder area). (R. 19.)

On January 27, 2000, an X-ray evaluation of Plaintiff's cervical spine showed status post open reduction internal fixation with good apparent healing. (R. 153.)

On May 24, 2000, Plaintiff sought treatment from a chiropractor. (R. 205-07.)

At a later date (unspecified - Defendant alleges June of 2000), another non-examining state agency physician (unidentified) also reviewed Plaintiff's medical record/evidence and determined that he retained the RFC to perform medium work (just as Dr. Burris found on July 15, 1999). (R. 181-88.)

*ALJ'S Findings/Decision*

The ALJ found, on November 24, 2000, that Plaintiff had the RFC to perform light work (except for reaching overhead with his right arm) and that his impairments did not prevent him from

4

performing his past relevant work as an auto detailer. (R. 21.) Moreover, Plaintiff's subjective allegations of severe pain were not consistent with the objective medical evidence and other evidence in the record. (R. 20-21.) The ALJ therefore concluded that there was insufficient medical evidence to support Plaintiff's allegations regarding his restricted abilities. (R. 20.) Accordingly, Plaintiff was not disabled.

*Appeals Council*

On April 5, 2001, Plaintiff timely submitted additional, post-hearing evidence (in response to a written request from the Appeals Council) for consideration by the Appeals Council. (R. 9.)

On July 10, 2002, the Appeals Council reviewed Plaintiff's claims under the new listing for musculoskeletal disorders; specifically Listing 1.04A (disorders of the spine) and considered the new evidence submitted to the Council, but found that there was no basis for changing the ALJ's decision. (R. 6.)

## LEGAL STANDARDS

### I. STANDARD OF REVIEW

Judicial review of the Commissioner's final decision is limited. The Act at 42 U.S.C. § 405(g) establishes that the Commissioner's findings as to any fact are conclusive if they are supported by substantial evidence. *See also Brewer v. Chater*, 103 F.3d 1384, 1390 (7th Cir. 1997). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Pearles*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971); *Brewer*, 103 F.3d at 1390. The court may not reevaluate the facts, reweigh the evidence, or substitute its own judgment for that of the Commissioner. *See Brewer*, 103 F.3d at 1390. Conclusions of law, however, are not entitled to deference. Thus, if the Commissioner commits an

error of law, reversal is required without regard to the volume of evidence in support of the factual findings. *See Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997).

## II. STATUTORY AND REGULATORY FRAMEWORK

To receive disability benefits, SSI and DIB claimants must be "disabled" as defined by the Act. *See* 42 U.S.C. § 423(a)(1)(D); 42 U.S.C. § 1382(a); *Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993). An individual is "disabled" if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *See* 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a). *See also Jones v. Shalala*, 10 F.3d 522, 523-24 (7th Cir. 1993). To satisfy this definition, an individual must have a severe impairment that renders him unable to do his previous work or any other substantial gainful activity that exists in the national economy. *See* 20 C.F.R. § 404.1505(a).

The Social Security regulations delineate a five-step process for determining whether a claimant is disabled within the meaning of the Act. *See* 20 C.F.R. § 404.1520. The ALJ first considers whether the claimant is presently employed or "engaged in substantial gainful activity." 20 C.F.R. § 404.1520(b). If he is, the claimant is not disabled and the evaluation process is over; if he is not, the ALJ next addresses whether the claimant has a severe impairment or combination of impairments which "significantly limits . . . physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). Third, the ALJ determines whether that severe impairment meets any of the impairments listed in the regulations. 20 C.F.R. Pt. 404, Subpt. P, App.1. If it does, then the impairment is acknowledged by the Commissioner to be conclusively disabling. *See Brewer*, 103 F.3d at 1391.

If the impairment does not so limit the claimant's remaining capabilities, the fourth step is that the ALJ reviews the claimant's RFC and the physical and mental demands of his past work. RFC is a measure of what an individual can do despite the limitations imposed by his impairments. *See* 20 C.F.R. §§ 404.1545(a), 416.945(a). *See also* Social Security Ruling 96-8p (1996). If the claimant can perform his past relevant work, he will be found not disabled. *See* 20 C.F.R. § 404.1520(e).

For the fifth step, if the claimant shows that his impairment is so severe that he is unable to engage in his past relevant work, then the burden of proof shifts to the Commissioner to establish that the claimant -- in light of his age, education, job experience and functional capacity to work -- is capable of performing other work and that such work exists in the national economy. *See* 42 U.S.C. § 423(d)(2); 20 C.F.R. § 404.1520(f). *See also Brewer*, 103 F.3d at 1391.

## ANALYSIS

In the subject motion for summary judgment, Plaintiff initially seeks an outright reversal of the ALJ's decision and a remand for an immediate award of benefits alleging that he meets the listing for disorders of the spine; specifically, Listing 1.04A (Subpart P, Appendix I, Part 404, Section 1.04A). (Pl.'s Mem. at 7-10.) Upon review of the record, however, the Court finds that an outright reversal is not warranted.

Alternatively, Plaintiff seeks to remand the case to the Social Security Administration for reconsideration of his disability claim. (Pl.'s Mot. for S.J.) With regard to remand, Plaintiff has presented two issues for the Court's review. Plaintiff specifically avers that: (1) the Appeals Council erred in failing to fully consider the new medical evidence and it should have remanded the case to the ALJ for further consideration of this new evidence; and (2) the ALJ's rejection of his credibility

7

is not supported by substantial evidence. (Pl.'s Mem. at 3.)

*First Issue*

With respect to issue number one, the Court agrees with Plaintiff and finds that a remand is warranted. Initially, the ALJ has not had an opportunity to review the matter under new listing 1.04A. Specifically, the Court finds that the Appeals Council erred when it failed to remand the case to the ALJ for consideration of the new and material medical evidence of Plaintiff's alleged disability (and a review of all the evidence under Listing 1.04A).

The Court may remand the case for consideration of new and material evidence, provided that there is good cause for the failure to submit the evidence to the agency during prior proceedings. 42 U.S.C. § 405(g); *Sample v. Shalala*, 999 F.3d 1138, 1144 (7th Cir. 1993). Evidence is "new" if it is "not in existence or available to the claimant at the time of the administrative proceeding." *See id.* The Seventh Circuit has stated that to establish materiality, a plaintiff must show a "reasonable probability" that the ALJ would have reached a different disposition of the disability claim if presented with the new evidence. *See id.* The Seventh Circuit has also stated that evidence is "material" if there is a "reasonable possibility" that it would have changed the outcome of the ALJ's determination. *Sears v. Bowen*, 840 F.3d 394, 400 (7th Cir. 1993). Plaintiff bears the burden of proof that the evidence is new and material and that good cause exists.

Herein, the Court finds that the medical evidence Plaintiff submitted to the Appeals Council was generated by examinations and testing done after the date of the administrative hearing; therefore, they were not in existence at the time of the hearing and are as a consequence "new". Specifically, medical records from Dr. Semyon Shulman, M.D. dated March 29, 2001 to April 9, 2001 (R. 251-262) and medical records from Dr. Michael Gross, M.D. dated April 12, 2001 (R. 263-

268) came into existence after the November 24, 2000 administrative hearing. Because these records were not in existence or available to Plaintiff at the time of the administrative hearing, he has met his burden of showing that the medical records are new and that he had good cause for failing to incorporate this evidence into the record at the time of the hearing. *Brown v. Chater*, 913 F.Supp. 1210, 1216 (N.D. Ill. 1996).

The Court also finds that the new evidence is material. Specifically, Dr. Shulman conducted a neurological examination of Plaintiff and diagnosed him as having L5 radiculopathy (disease of the nerve roots). (R. 257.) Moreover, Dr. Shulman noted that Plaintiff has "decrease[ed] vibration sensation in his left foot, as well as decrease[ed] [] pinprick sensation in the L5 distribution in his left leg" (R. 257) and that his "straight leg elevation test is positive to 30 degrees elevation on the left." (R. 257.) Dr. Shulman recommended that Plaintiff take Arthrotec and Elavil medications and that he have an MRI of his lumbosacral spine. (R. 257.)

The results of Plaintiff's MRI indicates that Plaintiff has (1) minor disk bulging at L3-L4; (2) mild to moderate bilateral foraminal stenosis at L4-L5 secondary to disk bulging, with a small right paramedian disk herniation superimposed; (3) *a Grade 1 L5-S1 spondylolisthesis secondary to L5 spondylolysis, which creates moderate right and severe left foraminal stenosis*; and (4) no disk herniation. (R. 252.)

Subsequently, Dr. Shulman conducted a follow-up examination of Plaintiff. (R. 260.) At that time, Dr. Shulman recommended that Plaintiff increase his medications, undergo an EMG of his left leg, and make an appointment with an orthopedist or neurosurgeon for his lower back problems. (R. 261.)

Thereafter, Dr. Michael D. Gross, M.D. conducted an independent medical evaluation of

Plaintiff. (R. 263-268.) Dr. Gross diagnosed Plaintiff with residuals of a low back injury, with right sciatic nerve root irritation, narrowing of the L5-S1 disc spaces; spondylolysis and Grade I spondylolisthesis; residuals of a cervical spinal injury with cervical nerve root irritation; and pre-existing C4-C5 fusion. (R. 266.) Dr. Gross conducted an X-ray evaluation of Plaintiff's lumbar spine and found that the narrowed disc space between L5 and S1 (with end plate sclerosis and "vacuum phenomenon") was due to degenerative disc disease. (R. 265.) In addition, Dr. Gross *inter alia* found that Plaintiff's range of motion was reduced, the Ely sign was positive on the left which indicates lumbo-sacral disease, the Gaenslen sign was positive bilaterally which indicates sacroiliac disease, the left thigh is atrophied, there is a diminished sensation on the lateral aspect of the left calf and on the medial, lateral and dorsal aspect of the right foot, and on the entire left thigh and sole of the left foot, and there is some straight leg raising deficiency.[2] (R. 263-68.)

Given these circumstances, a remand is warranted. Upon remand, the ALJ is instructed to consider the additional medical evidence and reevaluate Plaintiff's claim(s) in light of new listing 1.04A (disorders of the spine) and to determine medical equivalency[3] with respect to Plaintiff's impairment(s). *See* Subpart P, Appendix I, Part 404, Section 1.04A. As part of this consideration

---

[2]Parenthetically, although, of course, not determinative, Dr. Gross did opine that Plaintiff is totally disabled. (R. 268.)
It also perhaps bears noting that the Vocational Expert called by the ALJ testified that if Plaintiff's subjective complaints are accurate, there is no work in the national economy that Plaintiff is capable of performing. (R. 59.)

[3]To determine whether an impairment or a combination of impairments is of severity equivalent to a listed impairment, the set of symptoms, signs, and laboratory findings in the medical evidence supporting a claim must be compared with the set of symptoms, signs, and laboratory findings specified for the listed impairment most like the individual's impairment(s). The impairment(s) may be judged to be equivalent to a listed impairment only if the medical findings (defined as a set of symptoms, signs, and laboratory findings) are at least equivalent in severity to the set of medical findings for the listed impairment. *SSR 83-19.*

and reevaluation, the ALJ is also instructed to obtain testimony from a Medical Expert to provide an informed basis for decision on the relevant issue(s). *See e.g., Green v. Apfel*, 204 F.3d 780, 781 (7th Cir. 2000) (stating that "the procedure for adjudicating social security disability claims departs from the adversary model to the extent of requiring the administrative law judge to summon a medical expert if that is necessary to provide an informed basis for determining whether the claimant is disabled.") *See also Cline v. Barnhart*, No. IP 01-1220-C-T/F, 2002 WL 31242223, *9 (S.D. In. Aug. 16, 2002) ("The ALJ should consult a medical expert to determine if [a claimant's] impairments, do in fact equal a Listing.")

*Second Issue*

With respect to Plaintiff's second issue, in view of the Court's finding, *supra*, the Court deems it unnecessary to decide whether the ALJ erred in her credibility finding regarding Plaintiff.

However, the ALJ should be cognizant of, and give due consideration to, the following upon remand.

First, SSR 96-7p provides in pertinent part,

> [T]he adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment. The adjudicator may need to recontact the individual or question the individual at the administrative hearing in order to determine whether there are good reasons the individual does not seek medical treatment or does not pursue treatment in a consistent manner. The explanations provided by the individual may provide insight into the individual's credibility. *SSR 96-7p*.

Moreover, SSR 96-7p sets forth examples for why a claimant may chose not to seek medical treatment; such as, " . . . the individual may be unable to afford treatment and may not have access

11

to free or low-cost medical services." *See id.*

Herein, the Court finds that the ALJ may have incorrectly discounted Plaintiff's credibility when she based, *inter alia*, her credibility finding on the fact that Plaintiff failed to seek medical treatment for his impairment(s) after his neck surgery (i.e., cervical fusion). (R. 19.) For example, in her decision, the ALJ notes that after his surgery, Plaintiff saw his treating physician once in March of 2000 and he saw a chiropractor in June of 2000. (R. 19.) Moreover, the ALJ noted that Plaintiff did not take any prescribed medications for his impairment(s). (R. 19-20.)

Based on the record, however, Plaintiff testified that he did not seek medical treatment because he could not afford to do so because he did not have any health insurance. (R. 34, 35, 36, 39.)

Next, the ALJ cites what she refers to as "a vast array of daily activities" performed by Plaintiff, stating that "he drives three to four times per week; he mowed his lawn at least once last summer; he went fishing one time; he went to the car show with his son (for two hours); he builds plastic models two times per week for approximately one hour; and he helps his wife care for their one-year old granddaughter during the day, although it hurts to lift her as she is fourteen pounds, he is able to do it." (R. 19.) While Plaintiff testified that he performed these activities, they were severely restricted and limited in nature. (R. 44-46.) Therefore, it may be that Plaintiff's daily activities are fairly restricted and not the kind of activities that undermine or contradict a claim of disabling impairments and an inability to perform the full range of extertional and non-exertional work-related activities. *See, e.g. Zurawski*, 245 F.3d at 887; *Clifford*, 227 F.3d at 872 (noting "minimal daily activities . . . do not establish that a person is capable of engaging in substantial physical activity"; *See also, Brown v. Massanari*, 2001 WL 1315075, *2 (N.D. Ill. Oct. 26, 2001);

*O'Connor v. Sullivan*, 938 F.2d 70, 74 (7th Cir. 1996).

## CONCLUSION

In view of the foregoing, the Court grants Plaintiff's Motion for Summary Judgment insofar as it requests a remand. Accordingly, the cause is remanded to the Commissioner for further proceedings consistent with this opinion.

ENTER:

*[signature]*

**IAN H. LEVIN**
**U.S. Magistrate Judge**

**Dated: April 29, 2003**